S96A0953. DUPREE v. THE STATE.
(472 SE2d 299)

BENHAM, Chief Justice.

James Cornelius Dupree was convicted of malice murder and possession of a sawed-off shotgun for which he was sentenced to life plus a consecutive five years.[1]

The evidence presented at trial indicated that Dupree had been dating Tishonia Clay while her boyfriend, and the father of her three children, Carlos Lamar Duffey, was in prison. Clay testified that she told Dupree that their relationship would end once Duffey was released from prison. On at least two occasions, Dupree told Clay that he would not allow the relationship to end and that he would kill Duffey instead.

After Duffey was released from prison, he and Clay renewed their relationship. One night Dupree came over to Clay's house when Duffey was present and refused to leave. Duffey called the police and

---

[1] The crimes were committed on June 4, 1994. Dupree was indicted in December 1994, and a jury trial commenced on February 20, 1995. On February 21, the jury convicted Dupree of malice murder and possession of a sawed-off shotgun. Dupree filed a motion for new trial on March 7, 1995, and an amended motion on February 8, 1996. The trial court denied the motion on February 27, 1996, and Dupree filed a notice of appeal on March 1, 1996. The case was docketed in this Court on March 12, 1996, and was submitted for decision on briefs.

the police escorted Dupree from Clay's home. Two days later, around 5:00 a.m., Dupree went back to Clay's house this time with a sawed-off shotgun. He entered the attic via an exterior opening and dropped into a back bedroom. He then went into the living room where five people, including Duffey, had fallen asleep while watching television. Dupree went directly to Duffey, raised the shotgun to Duffey's head, fired, and ran out of the house. One of the five persons in the room testified that she awakened at the sound of the gunshot and saw Dupree running from the room. The medical examiner testified that Duffey died from a gunshot wound that was inflicted from a distance of three to five inches away.

After shooting Duffey, Dupree drove to a beaver pond near his parent's home, where he resided, and threw the gun into the pond. He then went back to his parent's home and went to sleep. Dupree was arrested later that same day, and, during interrogation, he gave oral and written statements to the police admitting to committing the murder. He also took police to the beaver pond and directed them to the area where he threw the shotgun. At trial, Dupree testified that he could not remember whether he shot Duffey and, "I guess I had — I had to have done it. I — I don't know."

1. Dupree argues that the trial court erred in admitting into evidence the statements he gave to police because the statements were taken after he had requested an attorney. He contends that in addition to making an express request for counsel, he subsequently made an ambiguous request when he read to one of the interrogating officers the portion of the *Miranda* warnings which provided that if Dupree could not afford a lawyer, one would be appointed to represent him. Dupree asserts that, under *Hall v. State*, 255 Ga. 267 (336 SE2d 812) (1985), the interrogating officers had a duty to limit the scope of the questions to the clarification of his request.

Contrary to Dupree's assertions, we conclude that the trial court properly admitted Dupree's statement into evidence. The testimony of all three of the interrogating officers at the hearing pursuant to *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964), indicated that Dupree at no time requested counsel or exercised his right to remain silent, and the trial court was authorized to make a credibility decision regarding the witnesses' testimony. *Woodruff v. State*, 233 Ga. 840, 844 (3) (213 SE2d 689) (1975). Further, Dupree's contention that he at least gave an ambiguous request for counsel is based on his recitation of the *Miranda* right regarding counsel. The record reveals that the recitation was made at the request of an interviewing officer to make sure that Dupree understood that right. We conclude that this was not an ambiguous or equivocal request for counsel. See *Henry v. State*, 265 Ga. 732 (4) (b) (462 SE2d 737) (1995).

2. Dupree also argues that the trial court should have granted the motion for new trial since Dupree's statements to the police should have been excluded and, consequently, the evidence was insufficient for a rational trier of fact to find Dupree guilty. We concluded in Division 1 that Dupree's statements were properly admitted into evidence, and we also conclude that the evidence was sufficient to enable a trier of fact to find Dupree guilty beyond a reasonable doubt of the crimes charged. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

3. Dupree finally contends that the trial court should have granted his motion for mistrial on the grounds of prosecutorial misconduct. Dupree argues that during the State's closing argument, the prosecutor pointed out to the jury that the family of the victim was in the courtroom which placed pressure on the jury to convict Dupree out of sympathy for the family in violation of *Harper v. State*, 249 Ga. 519 (14) (292 SE2d 389) (1982).

Contrary to Dupree's assertions, this Court did not specifically hold in *Harper* that evoking sympathy for the family of the victim is error. In that case, we found no error where the trial court granted the defendant's request for a charge that sympathy for the victim's family could play no role in the jury's determination of guilt or innocence and the defendant did not make a motion for mistrial. *Harper*, supra. In fact, we have held that it is not error to remind the jury that family members of the victim do not now have a mother, wife or sister. *Ward v. State*, 262 Ga. 293 (6) (g) (417 SE2d 130) (1992). See also *Moon v. State*, 258 Ga. 748, 760 (375 SE2d 442) (1988). Consequently, because Dupree did not make an objection to what the prosecutor said,[2] but only that he pointed at the victim's family, and because we find no error in such action, we hereby affirm the trial court's denial of Dupree's motion for mistrial.

*Judgment affirmed. All the Justices concur.*

DECIDED JULY 15, 1996.

*Johnny B. Mostiler,* for appellant.

*William T. McBroom III, District Attorney, Daniel A. Hiatt, Assistant District Attorney, Michael J. Bowers, Attorney General, Wesley S. Horney, Assistant Attorney General,* for appellee.

---

[2] Dupree failed to request that closing arguments be recorded, thus the prosecutor's statements when pointing to the victim's family are not contained in the record.