## 75121. HOWARD v. THE STATE.
(364 SE2d 600)

POPE, Judge.

Defendant Mark Howard, a prison corrections officer, was convicted of armed robbery and aggravated assault of a former inmate, crossing of guard lines of a prison facility with drugs in violation of OCGA § 42-5-15, and possession of less than one ounce of marijuana. The victim, a former inmate of the Men's Correctional Institution at Hardwick where defendant was formerly employed, testified defendant had sold drugs to inmates at the prison using the victim as a middleman to deliver drugs to other inmates and return money in payment for said drugs to defendant. On February 21, 1986, after the victim had been released from prison, defendant confronted the victim and demanded several items of jewelry he was wearing as payment for a debt. When the victim refused to give defendant any additional money or items of value, defendant shot the victim three times with a .38 caliber pistol loaded with pellet-type cartridges. On February 25, 1986 defendant was arrested at Central Correctional Institution in Macon where he was then employed. A search of his automobile, which was parked within the prison gates, revealed a substance which later proved to be marijuana. Before taking defendant to the police station to have him booked, the arresting officers drove defendant to the house of his girl friend where defendant also lived. With the consent of defendant's girl friend, the officers searched the house,

found a .38 caliber pistol containing two spent pellet cartridges and the jewelry stolen from the victim. Defendant appeals, setting forth four enumerations of error.

1. Defendant argues the trial court erred in denying his motion to suppress the evidence found in his automobile and in his girl friend's house on the ground the searches of the automobile and house were without probable cause and were conducted without a search warrant. "It is . . . well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent." *Schneckloth v. Bustamonte*, 412 U. S. 218, 219 (93 SC 2041, 36 LE2d 854) (1973). The issues presented by the defendant's motion were whether the consent given by the defendant for the search of his automobile and the consent of the defendant's girl friend for the search of her house were in fact voluntary or the product of coercion.

Shortly after being placed under arrest defendant signed a written consent to the search of his automobile. The mere fact that defendant was under arrest at the time he gave his consent to the search does not establish the consent was made involuntarily or by coercion. See *Fuller v. State*, 165 Ga. App. 55 (1) (299 SE2d 397) (1983). Either before or after defendant signed the consent form an officer of the State Department of Corrections, who was present at the time of defendant's arrest, informed defendant that his consent was unnecessary since the Department of Corrections has authority to search any person or vehicle inside the premises of the prison. Citing *Bumper v. North Carolina*, 391 U. S. 543 (88 SC 1788, 20 LE2d 797) (1968), defendant argues this statement implied defendant had no right to resist the search and therefore his consent was not voluntary. Unlike the facts in *Bumper*, this case does not present a situation "instinct with coercion." Id. at 550. *Bumper* stands for the proposition that voluntary consent is not established by showing mere acquiescence to an officer's claim of lawful authority when, in fact, that authority does not exist.

The issue in this case is whether the Department of Corrections official did have lawful authority to search the automobile of a prison employee parked inside the "guard line" of the prison, as he represented. We agree with the opinion of the Attorney General that corrections officials have the authority to condition a visit to a corrections institution on the visitor's willingness to submit to a search for contraband or other items prohibited by OCGA § 42-5-15. See Op. Atty. Gen. 74-146 (Nov. 7, 1974). At the prison in question, a sign was posted at the entry of the premises, which defendant would have passed daily as he reported to work, giving notice that all vehicles passing the "guard line" of the prison were subject to search. Under these circumstances, we find that prison officials also have authority

to search the vehicle of an employee parked inside the "guard line." We note that an official from the Department of Corrections was present and participated in the search of defendant's vehicle. By driving his automobile onto the premises, defendant consented to such a search. Therefore, even if the statement by the prison official were made before defendant signed the written consent, it would not constitute coercion.

In regard to the search of the house, defendant's girl friend testified at the hearing of the motion to suppress that she consented to the search only because one of the officers informed her that if she did not consent she could be prosecuted for obstruction of justice. The officer denied making any such statement. According to the officer, he informed defendant's girl friend that she was not required to sign the written consent and that if she did not sign he would have to obtain a search warrant from a judge. In response, the girl friend stated, "Well, I don't have anything to hide," and signed the consent form. By denying defendant's motion to suppress, the trial court obviously believed the testimony of the law enforcement officer and not that of defendant's girl friend. " '(T)he trial court's decision on questions of fact and credibility at a suppression hearing must be accepted unless clearly erroneous. [Cits.]' " *Williams v. State*, 151 Ga. App. 833, 834 (261 SE2d 720) (1979). We find no error in the denial of defendant's motion to suppress.

2. Defendant next argues the court erred in overruling his objection to admitting into evidence the jewelry (Exhibit 3), pistol (Exhibit 2), and bullets and spent casings recovered from the pistol (Exhibits 8 and 9, respectively), all of which were discovered in a search of defendant's girl friend's house. For reasons discussed in Division 1 of this opinion, the trial court did not err in concluding this evidence was the fruit of a lawful search and overruling defendant's objection to said evidence. Moreover, defendant has no valid ground for objecting to the introduction into evidence of pieces of a plastic casing and shot pellets (Exhibit 7) recovered from the scene of the crime.

3. Defendant was properly informed of his rights pursuant to the holding in *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966). Defendant refused to sign a waiver of his right to counsel and requested an attorney. Nevertheless, defendant volunteered to give the officer directions to his girl friend's house. While the search of the house was underway, one of the arresting officers remained in the patrol car with defendant. Defendant repeatedly requested permission to go inside the house to assist in the search. At one point, defendant volunteered that if he was allowed to go into the house, he would lead the officers to the gun and the jewelry. In response to this comment, the officer expressed his surprise by asking, "How did you know jewelry was involved?" Defendant answered that one of the

other officers must have told him. Defendant argues the court erred in admitting this oral statement by defendant into evidence on the ground his right not to be interrogated without the assistance of a lawyer was violated.

Once an accused has expressed his desire to consult with an attorney, he "is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." *Edwards v. Arizona,* 451 U. S. 477, 484-485 (101 SC 1880, 68 LE2d 378) (1981). Defendant does not dispute that his offer to lead the officers to the gun and the jewelry was voluntarily made. The evidence shows that once defendant requested the assistance of an attorney, no further questions were posed to defendant until the officer asked how defendant knew jewelry was involved. Although this was, indeed, a question, the incriminating comment that defendant knew where to find the victim's jewelry was made voluntarily and was not made in response to any question by the arresting authority. Whether the accused himself initiated further communication is merely the first step in determining whether the communication is admissible into evidence. The second inquiry must be whether a valid waiver of the previously asserted right to counsel was made by the accused. *Oregon v. Bradshaw,* 462 U. S. 1039 (103 SC 2830, 77 LE2d 405) (1983). "[T]his determination depends upon ' "the particular facts and circumstances surrounding (the) case, including the background, experience, and conduct of the accused." ' " (Punctuation and cits. omitted.) Id. at 1046. In the case now before us, defendant himself was a sworn peace officer employed by the Department of Corrections. Under the facts and circumstances of this case, the trial court was correct in finding the incriminating comment which was volunteered by defendant was made as a result of a conscious and valid waiver of his previously asserted right to counsel.

4. Defendant's constitutional challenge to the offense of crossing guard lines with drugs, as defined in OCGA § 42-5-15, must be dismissed for failure to raise the issue below. Where a defendant makes no effort to raise a constitutional question during the trial of the case, he cannot be heard to raise it on appeal. *Frashier v. State,* 217 Ga. 593 (124 SE2d 279) (1962).

5. Finally, defendant challenges the guilty verdict on the general grounds that the verdict was contrary to law, contrary to the evidence and against the weight of the evidence. The defendant disputed the testimony of the victim by offering his own testimony that the victim was injured and robbed by an unidentified third party. Jurors are the exclusive judges of the credibility of witnesses and "may accept whatever evidence they deem most reasonable and credible." *Miller v. State,* 174 Ga. App. 703, 704 (331 SE2d 616) (1985). The testimony of

the victim was amply sufficient to enable a rational trier of fact to find defendant guilty on all counts. See generally *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). Therefore, the trial court did not err in denying defendant's motion to direct a verdict of acquittal.

*Judgment affirmed. Birdsong, C. J., and Deen, P. J., concur.*

DECIDED JANUARY 4, 1988.

*William D. Gifford*, for appellant.

*Willis B. Sparks III, District Attorney, Robin B. Odom, Assistant District Attorney*, for appellee.