## A90A0997. MANN v. THE STATE.
(397 SE2d 17)

BANKE, Presiding Judge.

The appellant was found guilty of trafficking in cocaine, possession of a firearm during the commission of a crime, carrying a concealed weapon, driving a motor vehicle at a time when his driver's license was suspended, and failure to drive in a single lane. He contends on appeal that the trial court erred in refusing to suppress the contraband upon which the cocaine trafficking conviction was based.

A state trooper stopped the appellant for "weaving" in and out of his lane of traffic on I-95 in McIntosh County. Asked for his driver's license, the appellant responded that it had been suspended; and asked about the ownership of the vehicle, he responded that it belonged to a passenger, Jeffrey Olreidge, who had been asleep in the back seat. The trooper thereupon questioned Olreidge separately about the nature of their trip and became "suspicious" when the latter's responses were inconsistent with those previously given by the appellant. Consequently, while radioing his headquarters to obtain a records check on the appellant, the trooper requested a backup unit. Approximately 10 to 15 minutes later, two sheriff's deputies arrived in response to this request.

Upon the arrival of the deputies, Olreidge consented in writing to a search of his vehicle, "including luggage and contents thereof." While the trooper was preparing the consent form for Olreidge's signature, one of the deputies asked the two suspects whether they had any weapons. Olreidge responded that there was a gun in the car, and the appellant made a statement suggesting that he had a weapon on his person. The appellant was then subjected to a patdown search, resulting in the seizure of a small handgun from a lower pocket on one of his pant legs.

While one of the deputies was removing a garment bag from the trunk during the ensuing search of the vehicle, the appellant yelled out that this bag belonged to him. The deputy in question testified that he responded by saying, "All right. All I want to do is look in it," and that the appellant replied as follows: "Well, that's okay. I just wanted to let you know that was my bag." The appellant denied having made such a statement. The cocaine upon which his trafficking

conviction was based was discovered during the succeeding search of this garment bag. *Held*:

1. The appellant contends that Olreidge's consent to the search of the vehicle was invalid because 25 minutes had elapsed between the time the vehicle was stopped and the time he signed the consent form, thereby converting the initially lawful detention of Olreidge into an unlawful arrest. However, it is apparent from the trooper's testimony that about half this time was occupied with the initial questioning of the two men, leaving an additional delay of only 10 to 15 minutes before Olreidge gave his consent to the search. Compare *Schmidt v. State*, 188 Ga. App. 85 (372 SE2d 440) (1988) (where approximately an hour elapsed between the time of the initial stop and the arrival of a drug-sniffing dog); *Radowick v. State*, 145 Ga. App. 231 (244 SE2d 346) (1978) (where the defendants were held for more than 40 minutes before they "consented" to the search, during which time they were assured that their vehicle would be searched before they were released). The appellant is in any event without standing to object to the search on the ground that it violated Olreidge's Fourth Amendment rights, inasmuch as " '[t]he Fourth Amendment right against unreasonable search and seizure is a personal right and may not be asserted vicariously. *Rakas v. Illinois*, 439 U. S. 128 (1) (99 SC 421, 58 LE2d 387).' " *Delgado v. State*, 192 Ga. App. 356, 357 (384 SE2d 680) (1989).

2. "The mere fact that defendant was under arrest at the time he gave his consent to the search [of his garment bag] does not establish the consent was made involuntarily or by coercion." *Howard v. State*, 185 Ga. App. 465, 466 (364 SE2d 600) (1988). Nor is it essential to the validity of a consent search that the appellant be informed of his right to refuse. See *Woodruff v. State*, 233 Ga. 840, 844 (213 SE2d 689) (1975).

3. The appellant contends that "the weight of the evidence" contradicted the deputy's testimony that he indicated it was "okay" to search his garment bag. While the testimony offered by the other deputy and by the trooper tended to corroborate the appellant's denial that he made such a statement, " '[o]n motion to suppress evidence, the trial judge sits as the trior of the facts, hears the evidence, and his findings . . . are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support (them).' *State v. Swift*, 232 Ga. 535, 536 (207 SE2d 459) (1974)." *Ward v. State*, 193 Ga. App. 137, 138 (387 SE2d 150) (1989). Since the deputy who conducted the search testified positively that the appellant consented to it, we must conclude that the trial court was authorized to deny the motion to suppress.

4. The evidence, construed in the light most favorable to the verdict, was sufficient to enable a rational trier of fact to find the appel-

lant guilty beyond a reasonable doubt of each of the offenses of which he was convicted. See generally *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgment affirmed. Birdsong and Cooper, JJ., concur.*

DECIDED SEPTEMBER 4, 1990.

*Samuel G. Oliver*, for appellant.
*Dupont K. Cheney, District Attorney*, for appellee.